IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTINA FONTAINE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-1485-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| RENT-A-CENTER WEST, INC., a | ) | |
| foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Eric J. Fjelstad
Smith & Fjelstad
722 N. Main Street
Gresham, Oregon 97030

    Attorney for Plaintiff

Michael T. Garone
Nathan A. Schwartz Sykes
Schwabe, Williamson & Wyatt, P. C.
Pacwest Center
1211 S. W. 5th Avenue, Suite 1600
Portland, Oregon 97204

    Attorneys for Defendant

KING, Judge:

Plaintiff Christina Fontaine was not allowed to return to work at defendant Rent-A-Center West, Inc. ("RAC") after taking time off to recover from a back injury. She alleges claims against RAC for wrongful discharge and for violations of the federal Family Medical Leave Act and the Oregon Family Leave Act. Before the Court is Defendant's Motion to Dismiss and to Compel Arbitration (#8). For the reasons below, I grant the motion, compel arbitration, and dismiss the action.

**FACTS**

Fontaine began working for RAC in the late 1990s. On September 18, 2004, she executed a Mutual Agreement to Arbitrate Claims ("Agreement"), which states in part:

<u>Claims Covered By The Agreement</u>

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.
>
> The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims

excluded in the section of this Agreement entitled "Claims not Covered by the Agreement."

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board) in any way related to any claims covered by this Agreement.

Claims Not Covered By the Agreement

Claims I may have for workers' compensation benefits and unemployment compensation benefits are not covered by this Agreement. Also not covered are claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which either party may seek and obtain relief from a court of competent jurisdiction.

Crump Aff. Ex. 1 at 1-2.[1]

The Agreement also allows either party: (1) to be represented by an attorney; (2) to depose one individual plus any experts designated by the other party; (3) to serve requests for production of documents; (4) to ask the arbitrator for additional discovery; (5) to subpoena witnesses and documents; and (6) to arrange for a court reporter. The employee and RAC equally share filing fees and the arbitrator's fee, except if "the law of the jurisdiction in which the arbitration is held requires a different allocation of fees and costs in order for this Agreement to be enforceable, then such law shall be followed." Id. at 4.

---

[1] Fontaine moved to strike the Schwartz Sykes Declaration, which contained a copy of the Agreement, for lack of foundation. I grant the motion. The Crump Affidavit properly authenticates the copy of the Agreement attached to it.

**LEGAL STANDARDS**

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., was enacted "to reverse the longstanding judicial hostility to arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The United States Supreme Court has concluded that the FAA demonstrates a "liberal federal policy favoring arbitration agreements." Id. at 25 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)). Generally applicable contract defenses, such as fraud or unconscionability, may be used to invalidate arbitration agreements without contravening federal law. The enforceability of an arbitration agreement is considered under the laws of the state of contract formation. Al-Safin v. Circuit City Stores, Inc., 394 F.3d 1254, 1257 (9th Cir. 2005).

**DISCUSSION**

Fontaine contends that RAC's obligations under the Agreement are illusory because it requires arbitration of claims Fontaine has against numerous entities affiliated with RAC, such as its employees, agents, and subsidiaries, without a mutual obligation to arbitrate the claims of those affiliated entities. Fontaine also argues that employers rarely sue an employee and that the most common employer claims, suits for unfair competition or unauthorized disclosure of trade secrets, are excluded from the agreement's scope.

RAC argues that both parties are obligated to proceed to arbitration and notes that employers at times bring claims for theft, breach of contract, and negligence.

"A promise is not illusory when the promisor lacks an unconditional power to refuse to perform." Furrer v. Southwestern Oregon Community College, 196 Or. App. 374, 380 n.1, 103

P.3d 118 (2004) (citing Joseph M. Perillo and Helen Hadjiyannakis Bender, 2 Corbin on Contracts § 5.28, 149050 (2d ed. 1995)).

The Agreement does not give RAC an unconditional power to refuse to comply. There are claims which RAC could allege which it would have to prosecute in arbitration. RAC also cannot refuse to go to arbitration if Fontaine wished to arbitrate but RAC wished to proceed in court. I conclude that RAC's promises are not illusory.

Fontaine also raises several traditional defenses to a contract. She generally contends that the issues cannot be fully decided because there has not been discovery on the formation of the contract. If the Court wishes to examine evidence on the issue, Fontaine suggests converting the motion to one for summary judgment and allowing time for full discovery. Fontaine is certainly aware of the conditions under which the contract was executed but she chose not to file a declaration containing this information. I do not interpret this motion as one to dismiss for failure to state a claim and thus see no reason to convert it to a motion for summary judgment. I will proceed on the record before me.

Fontaine argues that the Agreement lacks consideration because it is illusory, a point which I do not accept, and because her continued work after executing the Agreement is not adequate consideration. Fontaine relies on McPhail v. Milwaukie Lumber Co., 165 Or. App. 596, 999 P.2d 1144 (2000), for its holding that plaintiff's continued employment after receiving a new employee handbook was not adequate consideration to modify the plaintiff's oral contract for employment until retirement. Id. at 600-01. Fontaine's situation is different from that in McPhail, however, because Fontaine was employed at will and the McPhail plaintiff was not. Thus, continuing to work in McPhail did not gain anything new for the employee. "Because he

had a right to employment until retiring, his continuing to work could not constitute consideration for any change in the term of his employment." Id. at 601. For an at-will employee, continued employment provides sufficient consideration for modification of the original contract of employment. Yartzoff v. Democrat-Herald Publishing Co., 281 Or. 651, 657, 576 P.2d 356 (1978). Because Fontaine continued working after executing the Agreement, there was adequate consideration to support it.

Fontaine next argues that the Agreement should not be enforced because it is a contract of adhesion. She notes that the Agreement appears to be a form contract and that there is no record of whether it was presented on a take-it-or-leave-it basis indicating unequal bargaining power.

A contract of adhesion is construed against the drafter if there is an ambiguous term. Jacob v. Blue Cross and Blue Shield of Oregon, 92 Or. App. 259, 263, 758 P.2d 382 (1988) (enforcing medical insurance policy). Contracts of adhesion are not unenforceable, however.

Fontaine's final defense is that the Agreement cannot be enforced because it is unconscionable. She points to the discovery limitations and the requirement that the arbitrator's fee shall be split equally between the parties.

Fontaine has not supplied authority to demonstrate that the equal fee-splitting provision would make the Agreement unconscionable under Oregon law. I also note that the Agreement allows the equal fee split to be changed.

Although the Agreement's discovery provisions are more limited than that allowed in federal court, the United States Supreme Court was not persuaded by the same argument. "Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the

simplicity, informality, and expedition of arbitration." Gilmer, 500 U.S. at 31 (internal quotation omitted). I also note that the arbitrator can approve additional discovery beyond what is allowed under the Agreement. This is an important point.

In summary, I am not persuaded that the Agreement should not be enforced because it is unconscionable. Fontaine has not demonstrated that she could prevail on any of the contractual defenses. Accordingly, I agree with RAC that this dispute must be resolved in arbitration.

## CONCLUSION

Defendant's Motion to Dismiss and to Compel Arbitration (#8) is granted. This action is dismissed without prejudice.

IT IS SO ORDERED.

Dated this ___13th___ day of January, 2006.

                                                /s/ Garr M. King
                                                Garr M. King
                                                United States District Judge